## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN C. DEMATOS and )<br>*Plaintiffs* )<br> )<br>Vs. )<br> )<br>MARSHALL S. HAZARD and )<br>GENERAL TRANSPORTATION )<br>SERVICE, )<br>*Defendants* )<br> ) | CIVIL ACTION NO.: 05-10372 |

## DEFENDANTS' SUBMISSION OF EXPERT REPORT TO PLAINTIFF

The defendants hereby enclose the expert report of Dr. John P. Latchaw dated December 15, 2005, and state that a copy of the report has been submitted to the plaintiff.

By Their Attorneys,

**MORRISON MAHONEY LLP**

/s/ Meredith P. Rainey
Gordon L. Sykes, BBO #555580
Meredith P. Rainey, BBO #652697
10 North Main Street
Fall River, MA 02720
(508) 677-3100

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 21, 2006.

/s/ Meredith P. Rainey

# John P. Latchaw, M.D., F.A.C.S.
## Neurological Surgery

100 Highland Street, Suite 123
Milton, MA 02186
617-696-1262

## DeMatos, John          12/15/05

John DeMatos is seen in neurosurgical office consultation at the request of Meredith Rainey, Esq. This is a pleasant 36 year old right-handed gentleman complaining of alternating occipital pain arising from the upper cervical spine that increases with stress and physical activities. He occasionally suffers from bilateral occipital deep scalp pain traveling as high as the vertex of the skull. He experiences episodic severe cervical range of motion limitations and ongoing baseline loss of cervical range of motion particularly in rotation. He admits to paresthesias with pins and needles sensation affecting both hands right much more frequently than left encompassing the II-V digits with occasional paresthesias along the thumb more often on the palmar surface than the dorsal surface that are positionally related. This is notable when elevating his arms above his shoulders and awakening from sleep. Sharp right paracentral low back pain is problematic with episodic shooting pain traveling along the right lateral thigh aggravated by bending forward, prolonged standing and heavy physical activity. He experiences infrequent paresthesias along all toes of the left dorsal foot surface. He admits to episodic reduced right hand grip, sharp central pain along the manubrium infrequently noted since his motor vehicle accident 1/17/02. According to Mr. DeMatos the aforementioned symptoms began at the time of an unfortunate motor vehicle accident January 17, 2002 at which time he was operating a small Toyota U-Haul truck. A large truck crossed the slippery road in front of him causing Mr. DeMatos to turn his vehicle toward the left in hopes of avoiding collision. His small truck skidded into the side of the larger truck causing Mr. DeMatos to wrench his neck throwing him forward in the vehicle striking his head injuring his neck low back and ribs. Mr. DeMatos was apparently rendered unconscious since he next recalls awakening for a short time in the ambulance en route to St. Luke's hospital. He indicates that he again lost consciousness. He recalls that he was hospitalized for 3-6 days with fractured right ribs and a fractured neck. He recalls that he was discharged from hospital and disabled from work until approximately April 2002. He has continuously work since this time although he has been limited in performing physically demanding tasks and early on was forced to hire assistant to accomplish tasks that he felt he would otherwise have been able to execute alone.

Mr. DeMatos indicated that he suffered a whiplash injury years before the motor vehicle accident January 17, 2002. Presumably he suffered cervical muscular tendon strain treated by two months of physical therapy with some transient improvement. His physician ordered x-rays that the patient reports were within normal limits. Persistent cervical strain symptoms were treated by Dr. David Fall, DC for several months thereafter. Upon completion of chiropractic care he denied any residual symptoms such as persistent loss of range of spinal motion.

John DeMatos                          page 2

Present for review today included extensive medical records that included motor vehicle accident December 18, 1999 for which he was diagnosed with cervical and lumbar strains/sprains. He was later treated for another automobile accident 8/4/01 in which time he suffered injury to the right knee and cervical spine. Medical records from St. Luke's hospital inpatient hospitalization 1/17/02-1/19/02 indicate that Mr. DeMatos was unemployed and suffered transient intermittent dazed condition with moderate severity of pain along the head, face, and neck. Loss of consciousness is crossed out on the triage emergency room record. History and physical examination from Dr. Nixon indicates however that he was suffering from a post-concussive syndrome with pain on the left side of his rib cage and a small laceration on the forehead at the right temple that required sutures. Abrasions on the right knee also required sutures and a laceration along the patellar tendon was similarly closed. His mental status was lethargic and amnestic. Head CT scan was within normal limits. CT neck suggested a cervical nondisplaced laminar fracture. Physicians recommended nonsurgical treatment including perhaps a Philadelphia or Miami J. collar. Chest x-ray demonstrated no specific abnormalities 1/18/02. Sternum x-ray and left rib cage x-rays demonstrated no fracture. Pelvic x-ray was normal. Lateral cervical and six view cervical x-rays showed no evidence of fracture or malalignment. Cervical CT scan 1/17/02 revealed a left C5 nondisplaced laminar fracture. Addendum to the cervical x-rays 1/17/02 found upon further review cervical spine fracture left C6 lamina. Flexion/extension cervical x-rays 1/19/02 showed left C6 laminar fracture and slight anterior subluxation of the body of the C6 vertebral body without dynamic instability. Follow-up progress note from Dr. Ronald Hantman unsigned without letterhead indicates review of previously executed flexion and extension cervical x-rays as good alignment. This physician found no gross fracture and indicated that "it is certainly well healed". Right knee MRI 2/22/02 revealed edema along the iliotibial track with an associated linear band and abnormal signal in the posterior horn of the medial meniscus suggesting a tear. The body of the medial meniscus was small presumably related to prior partial surgical repair according to the radiologist. Dr. Bruce Abbott examined Mr. DeMatos 1/17/02 and indicated that a cervical MRI had been scheduled.

Present for review today include copies of cervical spine x-rays performed February 26 2002 in neutral, flexion and extension and anterior posterior view. My review of studies indicate loss of the usual cervical lordosis with minimal movement between flexion and extension. Cervical MRI examination 9/9/04 reveals continued loss of the normal cervical lordosis with elements of multilevel cervical disc desiccation, slight C. 4/5 disc protrusion and small C. 5/6 posterolateral disc prolapse possibly encroaching the C6 neural foramen with loss of the usual voluminous spinal fluid surrounding the spinal cord. The studies are copies and appear to show displaced lateral portion of the superior cervical articulating facet presumably at C6. The probable displaced articulating facet of the cervical bone does not appear to encroach the neural foramen or vascular structures along the cervical spine axis in my opinion.

John DeMatos                              page 3

Medication Allergies: None
Medications: OxyContin 40 mg t.i.d., Oxycodone 5 mg for breakthrough pain, Valium 5 mg p.r.n. sleeping difficulties
Past Medical History: left leg compound fracture, previous left frontal laceration, right knee chondromalacia, GERD, whiplash injuries suffered when rear-ended years before his 2002 accident.
Past Surgical History: orthopedic screw insertions for compound left tibial fracture 1997, right knee arthroscopy
Social History: He does not smoke cigarettes. He drinks alcohol socially. He is unmarried. He has two children. His recent fiancé has left the state with his child to live in Florida. His oldest son is cared for by the mother of his first child who is now married. He did not complete high school education and began to study for his GED that he has not completed as of this time. He remains self-employed and works in the auto detailing and window tinting business. He uses ergonomic stools and other devices to assist his occupation while attempting to mitigate his ongoing cervical, occipital, and lumbar symptoms.
Family History: He denies hereditary neurological disease.
Review of Systems: He denies night sweats, unexplained weight loss, malaise, L'Hermittes' phenomenon, spinal injury since we motor vehicle accident January 17, 2002, dysphagia, dysphonia, diplopia, syncope, seizures, angina, recent foreign travel, dyspnea on exertion, and recent changes in bowel and bladder continence. He reports that his memory, mood, and affect are stable. He admits to episodic darkening of his vision that began July 2005. His physician has scheduled an appointment with an ophthalmologist in the near future to evaluate this condition.

Physical Examination: He is uncomfortable but in no acute distress. Vital signs are stable. He is normotensive and afebrile. Pulse = 78. He is 6'11" tall and weighs 200 lbs. He is alert, anxious, cordial and cooperative. He articulates a vague and circuitous history with fair eye contact. He is normocephalic and has an old left oblique frontalalis and a more recent right temporal healed laceration. Pupils are reactive to accommodation. Sclera is anicteric. Finger confrontation does not detect a visual field defect. Pupillary response is direct and consensual. His funduscopic exam is benign although I do not recognize any venous pulsations. He has increased perceived light intensity in the right retina. Extraocular muscles function normally. Conjugate gaze reflects smooth pursuit. Nystagmus is absent. Trigeminal sensory divisions are intact. Medial and lateral pterygoids propel his jaw without deviation. Temporalis and masseter atrophy is absent. His muscles of facial expression are symmetrical. He denies dysphagia and impaired olfactory function. Sternocleidomastoid and trapezius bulk and power are normal. His tongue is midline. Hearing is reduced. Weber testing significantly lateralizes to the right. Air conduction time is reduced on the right in comparison to bone conduction. His superficial temporal artery pulses are palpable. Lymphadenopathy is absent. His chest is clear to auscultation. Jugular venous dilatation is not visible at 30 degrees. There are no palpable thrills or heaves over his heart. His

John DeMatos                              page 4

abdomen is without organomegaly. Saddle anesthesia is absent. Rectal examination is deferred. His lower limb muscle bulk and tone is generally symmetrical without fasciculations. Proximal atrophy is not evident. Sciatic notch Tinel's sign is absent. Motor testing is non-focal. Hip adduction, abduction, flexion, and extension provide good power against resistance. Quadriceps and hamstring strength is full. He bears weight on his toes and heels with some difficulty. Bilateral leg elevation is tolerated to 80 degrees with some central low back pain. Leg retropulsion is somewhat stiff. His lumbar range of motion is reduced without spasm bilaterally with focal tenderness near the each L5/S1 facet complex/sacroiliac joint region. Achilles and patellar reflexes are normoactive; ankle reflexes = + 1 and knee reflexes = + 2. Ankle myoclonus and Babinski reflexes are absent. Sensory testing finds reduced pin sensation along the left lateral gastrocnemius and medial left mid and distal tibia that he relates to his previous compound fracture. Cerebellar and appendicular testing are fundamentally normal. Past pointing and dysdiadokinesis are absent. Resting and intention tremors are not present. Titubation, ataxia and truncal unsteadiness are not found. Romberg sign is negative. Overall bone and joint assessment is satisfactory. Inspection of his small joints finds no erythema, induration, or deformity. Neither acromioclavicular joint is swollen or painful. His knees, and ankles enjoy painless full range of motion. Internal rotation of the left hip is limited and uncomfortable. He has some point tenderness along the left greater trochanter. Left hip external rotation and right hip range of motion are unaffected. There are no palpable joint effusions. Skeletal crepitus is absent. Adson's sign is negative. Rubor of dependency and significant varicosities are not visible. Dorsal pedal pulses are palpable. His limbs do not exhibit cyanosis, clubbing, or pitting edema. Integument is intact. There are no trophic skin changes. Surface temperature is normal. His upper limb muscle bulk and tone is symmetrical without pronator drift. He does not exhibit fasciculations or atrophy. His arm strength is preserved against modest resistance, with the exception of left deltoid = 4.7 with pain, right infraspinatus = 4.5, left = 4.8. His biceps, triceps, and brachioradialis reflexes are hypoactive. Hoffman reflexes are absent. Cervical sensory testing detects hypalgesia along the left fifth digit palmar surface. Mild hypesthesia is detected along the right thumb, dorsal and palmar surfaces of the II-IV fingers. His cervical range of motion is modestly restricted particularly in left lateral rotation.

I believe Mr. DeMatos suffered cervical skeletal injury, occipital neuralgia, concussion, cervical and possibly lumbar muscular tendon strain at the time of his accident January 17 2002. His memory of his care for this accident and his previous accidents and treatment is obscured. I do not see a laminar fracture on his most recent cervical MRI examination submitted from 2004. If this was a definite finding, it appears to have healed without deformity. There is no spinal cord compression or specific nerve root encroachment as a result of the C6 nondisplaced laminar fracture found in some of the medical documents from St. Luke's hospital. I have no documentation to support his memory that he suffered fracture right thoracic ribs as a result of the motor vehicle accident January 17, 2002. There is no documentation in his medical record nor cervical

John DeMatos                              page 5

CT scan to review that supports my observation of a possible displaced lateral now fused superior articulating facet. This finding may not have been in existent on films following his automobile accident January 17, 2002 and/or may even be a congenital finding.

On the basis of his neurological examination and films presented today, I do not find any specific indication for neurosurgical operative intervention. I believe that it is reasonable for him to obtain spinal neurology or neurosurgical consultant who can review all previous films and perform additional neurodiagnostic testing if warranted. In view of the 2001 and 1999 vehicle accidents with subsequent many similar pains without objective neurological deficit, I only find a causal relationship between the motor vehicle accident January 17, 2002 and the post-concussive syndrome, recurrent cervical muscular tendon strain and soft tissue injuries including lacerations and abrasions to the motor vehicle accident January 17, 2002. Other review of systems such as bilateral lumbosacral pain, left hip discomfort with some limitation of internal rotation appears to mirror pre-existing symptoms prior to the motor vehicle accident January 17, 2002 within the documentation available. Light hypalgesia or diminished appreciation of pain sensation along the right hand does not follow a specific solitary dermatome and may be related to an underlying carpal tunnel syndrome and apparently has not been evaluated. I do not believe that this is related to the automobile accident January 17, 2002 but since a diagnosis has not been established, I can not state this with absolute certainty.

Mr. DeMatos shared his concern today regarding his continued use of opioid medication. I do not find any specific neurosurgical diagnosis in his case that would justify daily timed release opioid narcotics. He may benefit from pain management reassessment and gradual withdrawal of such potentially addictive medication in favor of non-narcotic alternatives. His current headaches and possible memory difficulties may derive from a post-concussive syndrome and therefore related to his last motor vehicle accident or may be due to current medication side effects or another cause. I recommend follow up medical neurology evaluation and brain MRI to investigate these symptoms.

I believe that he was totally and temporarily disabled as a result of injuries sustained January 17, 2002 through January 19, 2002. Subsequent to discharge from hospital he was recovering from injuries sustained from the automobile accident January 17, 2002. He indicates that he was unable to work full-time and was preparing his place of business to open April 2002. I believe that he was partially disabled until mid-April 2002 as a result of these injuries in my medical judgment and within a reasonable degree of medical certainty. Persistent limitations of his chosen profession may be related to the automobile accident January 17, 2002 but since there is no consistent definitive neurological diagnosis that can be related to specific spinal injury as objectively defined by x-ray, CAT scan, and MRI and due to two previous automobile accidents that required similar medical treatments, I cannot state that such self-imposed limitations are related to the motor vehicle accident January 17, 2002 within a reasonable degree of medical certainty. I find it impossible to authoritatively relate ongoing musculoskeletal treatment to the

John DeMatos                                    page 6

specific motor vehicle accident January 17, 2002 on the basis of medical documentation. Previous injuries may be related to the C. 5/6 cervical disc prolapse identified on MRI 2004. I believe that his treatment during hospitalization for injuries sustained January 17, 2002 have been reasonable and customary. With the information available to me, I concur with the treatment recommendations of both the consultant neurosurgeon and neurologist during his hospitalization.

The aforementioned information is true and accurate to the best of my knowledge. I am a board-certified neurological surgeon licensed to practice medicine in the Commonwealth of Massachusetts. Thank you very much for your courtesy.

Very truly yours,

John Pershing Latchaw, MD, FACS

Signed this 15th day of December 2005 under the pains and penalties of perjury.